UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE | CHAPTER 13 |
| MICHAEL J. HURLEY DBA THE SEBONAC COMPANY, | CASE NO. 8-23-72230-ast |
|  | JUDGE: Alan S. Trust |
| DEBTOR. |  |

**NOTICE OF MOTION REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4) WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 28 CLUB LANE, REMSENBURG, NY 11960 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)**

**PLEASE TAKE NOTICE** that upon the annexed affirmation of the undersigned of the law firm of LOGS Legal Group LLP, attorneys for Select Portfolio Servicing, Inc. as Servicer for Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 ("Movant") will move this Court as set forth below:

| | |
|---|---|
| JUDGE: | HON.  Alan S. Trust |
| RETURN DATE & TIME: | October 19, 2023 at 10:30 AM |
| COURTHOUSE: | 290 Federal Plaza, Room 960, Central Islip, NY 11722 |
| RELIEF REQUESTED: | Entry of an order pursuant to 11 U.S.C. § 362(d)(4) providing that any subsequent bankruptcy filings affecting real property described herein shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the entry of such an order; or, in the alternative, for an order pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2) granting relief from the automatic stay; and for such other and further relief as this Court may deem just and proper. |

18-069995

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by LOGS Legal Group LLP at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York at 290 Federal Plaza, Room 960, Central Islip, NY 11722 no later than seven (7) days prior to the return date of this motion.

PLEASE TAKE FURTHER NOTICE that any appearance within application will be held via audio, zoom or in person at the direction of the Judge. All parties are required to register for the hearing at least two days prior to the scheduled hearing by using the Court's ecourt Appearances Platform: https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl.

If for some reason you are not able to use the eCourt Appearances platform you must email the Courtroom Deputy at: ast_hearings@nyeb.uscourts.gov at least two (2) business days prior to the hearing and state that a reasonable effort to use the platform has been made. You must include your name, the case number(s), who you represent if you are an attorney, and the date of the hearing. **Your email must include in the Re line "I am not able to register using eCourt Appearances."** You will then be provided with the dial in / log in information. If you do not have internet access you may call the courtroom deputy with this information.

18-069995

Dated: _____September 8_____, 2023

/s/ Michael J. Chatwin
_____
Michael J. Chatwin
Robert W. Griswold
Shari S. Barak
LOGS Legal Group LLP
Attorneys for Select Portfolio Servicing, Inc. as
Servicer for Wells Fargo Bank, National Association
as Trustee for Securitized Asset Backed Receivables
LLC Trust 2006-FR1 Mortgage Pass-Through
Certificates, Series 2006-FR1
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:     SERVICE LIST

18-069995

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 13 |
| MICHAEL J. HURLEY DBA THE SEBONAC COMPANY, | CASE NO. 8-23-72230-ast |
| | JUDGE: Alan S. Trust |
| DEBTOR. | |

## MOTION REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4) WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 28 CLUB LANE, REMSENBURG, NY 11960 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)

The undersigned, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

1.  I am an attorney with the law firm of LOGS Legal Group LLP, attorneys for Select Portfolio Servicing, Inc. as Servicer for Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 ("Movant"), a secured creditor of Michael J Hurley ("Debtor").  As such, I am fully familiar with the facts and circumstances of this case.

2.  I make this Affirmation in support of the within request for an order pursuant to 11 U.S.C. § 362(d)(4)[1] with respect to certain real property described herein, providing that any subsequent bankruptcy filing affecting such real property shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the filing of such an order; and/or for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) against

---

[1] *Unless otherwise stated, all statutory references are to the provisions of the United States Bankruptcy Code.*

18-069995

the subject property generally described as 28 Club Lane, Remsenburg, NY 11960 and for such other and further relief as this Court may deem just and proper.

3.       Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## I.       STATEMENT IN SUPPORT OF *IN REM* RELIEF

4.       Within the past six years, a pending foreclosure has been halted or delayed by various tactics, including multiple bankruptcy filings, by Michael Hurley (the "Debtor"). Each bankruptcy petition filing asserted an interest in the real property located at 28 Club Lane, Remsenburg, NY 11960 (the "Property").  In addition, the mortgage is in default for 6 years, the default date being December 1, 2017.

5.       The first bankruptcy case was filed by Michael John Hurley on July 6, 2015, in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No. 8-15-72872-reg ("First Case"). The First Case was a barebones petition without any supporting schedules. The First Case was ultimately dismissed for failure to file information and the Dismissal Order was entered on September 15, 2015, as ECF Doc No.: 19. The Bankruptcy Case was closed September 30, 2015.

6.   The second case was filed Pro Se by Michael John Hurley on December 9, 2021 in the Bankruptcy Court for the Eastern District of New York under Chapter 11 as Case No. 8-21-72142-reg ("Second Case"). The Second Case was a barebones petition without any supporting schedules. The Second Case was ultimately dismissed for failure to pay filing fee, and the Dismissal order was entered January 12, 2022, as ECF Doc No.: 22. The Bankruptcy Case was closed March 25, 2022.

18-069995

7.   The third case was filed Pro Se by Michael J. Hurley on February 21, 2023, in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No. 8-23-70597-reg ("Third Case"). The Third Case was a barebones petition without any supporting schedules. The Third Case was automatically dismissed pursuant to 11 U.S.C. §521(i)(1) and the case was dismissed on April 10, 2023, as ECF Doc No.: 16. The Bankruptcy Case was closed April 25, 2023.

8.   The fourth case was filed Michael J. Hurley dba The Sebonac Company on June 21, 2023 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No. 8-23-72230-ast ("Fourth Case"). The Fourth Case is currently pending.

9.   **A foreclosure action was commenced on March 23, 2018 under index number 605465/2018.  The Judgment of Foreclosure and Sale was granted on February 28, 2020.** Following delay due to the Covid Moratorium, the Property has been noticed to be sold at a foreclosure sale four times.  The first sale scheduled for October 18, 2021, was cancelled due to publication error. The second sale scheduled for December 13, 2021, was cancelled for the Second Case filing.  The third sale, scheduled for February 23, 2023, was cancelled for the Third Case filing. The fourth sale, scheduled for June 22, 2023, was cancelled for the Fourth Case filing, filed one day prior to the scheduled sale.  The multiple filings of Debtor have severely hindered the foreclosure process resulting in multiple delays.

10.   The Debtor is not utilizing the automatic stay for legitimately seeking a fresh start as evidenced by multiple dismissals due to failure to provide necessary Schedules and documents needed to effectively prosecute the bankruptcy case.  Rather, the multiple bankruptcy filings are an abuse of the automatic stay and the bankruptcy system, used to thwart creditors' efforts to enforce their state law rights in their collateral.  There is more than an adequate basis to conclude,

18-069995

under § 362(d)(4), that the multiple cases are part of a scheme to delay, hinder, or defraud the efforts of Movant and other creditors who seek to enforce their state law remedies in the affected real property.

## II.      FACTUAL BACKGROUND

11. Movant is a secured creditor of the Debtor pursuant to a Note executed by Michael Hurley on July 18, 2005, whereby Michael Hurley promised to repay the principal amount of $742,500.00 plus interest to Fremont Investment & Loan (the "Note").  To secure the repayment of the Note, Michael J. Hurley granted Mortgage Electronic Registration Systems, Inc. as nominee for Fremont Investment & Loan a Mortgage, which was duly recorded in the Suffolk County Clerk's Office on August 8, 2005 in Liber M00021101, Page 915 (the "Mortgage," Note and Mortgage, collectively, as the "Loan"), encumbering real property located at 28 Club Lane, Remsenburg, NY 11960 (the "Property").  The Mortgage was transferred to Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1, and said transfer was memorialized by an Assignment of Mortgage executed on October 30, 2009 and recorded December 21, 2009 in Liber M00021898, Page 265.  Following significant default on the loan, the terms of the Loan were modified by agreement dated April 19, 2017 entered into by and between the Movant and the Debtor creating a new principal balance in the amount of $1,239,735.12 (the "Loan Modification Agreement").  Copies of the Note, Mortgage, Loan Modification Agreement, and Assignment of Mortgage are annexed hereto as **Exhibit "A".**

12. **The Debtor only made three (3) monthly payments on the loan modification agreement following modification due to significant default.**

13. The Mortgage was in default on the day the Debtor filed this bankruptcy. **Based upon said default, Movant initiated foreclosure proceedings in the Supreme Court of the State of New York, County of Suffolk, under index number 605465/2018 (the "Foreclosure Action"). Judgment of Foreclosure & Sale ("JFS") in the Foreclosure Action granted by the Honorable Thomas Whelan on February 28, 2020.** A copy of the JFS is annexed hereto as **Exhibit "B"**. The filing of the instant bankruptcy stayed said action.

### GROUNDS FOR *IN REM* RELIEF UNDER 11 U.S.C. § 362(d)(4)

14.    Taken together, the four bankruptcy cases provide a more than adequate basis to find that the bankruptcy filings are part of scheme to delay, hinder or defraud secured creditors.

11 U.S.C. § 362(d)(4) states that

> . . .after notice and a hearing, the court *shall* grant relief from the stay. . .
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, *if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors* that involved either-
>      (A)  transfer of all or part ownership of, or other interest in, such real property *without the consent of the secured creditor or court approval*; or
>      (B)  multiple bankruptcy filings affecting such real property. If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing.

11  U.S.C. § 362(d)(4) (emphasis added).

15.    To obtain relief under § 362(d)(4), the moving party has the burden of proving that the current filing by the Debtor "is part of a scheme, that the scheme involved the transfer of real

property or multiple filings, and that the object of the scheme is to hinder, delay, [or][2] defraud" the moving party.  In re Lemma, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008).

16.    Courts have considered several factors in determining whether multiple filings raise an inference of intent to hinder, delay or defraud secured creditors, including (1) debtor's failure to make post-petition payments on the loan, (2) debtor's failure to file the required documents and information necessary to prosecute the bankruptcy, and (3) the timing and the sequencing of the filings.  *See* In re Montalvo, 416 B.R. 381, 386–87 (Bankr. E.D.N.Y. 2009).

17.    When evaluating whether to grant relief under § 362(d)(4), "the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a reasonable inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors." In re Blair, 2009 Bankr. LEXIS 4195, 63 Collier Bankr. Cas. 2d (MB) 513 (noting that each filing occurred on the eve or shortly before significant events effecting the property at issue and consequently granting *in rem* relief).  In addition, when debtors "have evinced no true intention to reorganize their financial affairs . . . but [r]ather they have engaged in serial filings to thwart the efforts of [a secured creditor] to exercise its lawful rights under state law . . . [t]he serial filings are evidence of bad faith, and evidence of the fact that [the debtors] are abusing the bankruptcy process." In re Montalvo, 416 B.R. 381, 385–86 (Bankr. E.D.N.Y. 2009) (granting *in rem* relief while observing that the various cases filed between the present debtor and co-obligor were dismissed for failure to comply with filing requirements).

18.    The timing of the bankruptcy filings raise serious questions regarding Debtor's intent to hinder, delay and defraud Movant.  The timing and sequencing of these events "allows

---

[2] *Prior to the 2010 amendments to the Bankruptcy Code, § 362(d)(4) relief required the filing of a petition that was part of a scheme to "hinder, delay, and defraud creditor."  See Pub. L. 111-327, Sec. 2(a)(12)(C) (2010) (emphasis added).*

the Court to draw a permissible inference . . . that the instant petition [is] part of a scheme of Debtor to delay, hinder, and defraud" Movant.  <u>In re Montalvo</u>, 416 B.R. at 387.

19.    Lastly, upon information and belief, little to no payments have been made on the Loan secured by the Property in six (6) years, as the loan is contractually due for the December 1, 2017 installment.  As of June 29, 2023, the total amount owed on the Loan is $1,601,680.00.  *See* <u>In re Lemma</u>, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008) (weighing the borrower and debtor's attempts to fail to render payments to the secured creditor as part of a scheme to delay, hinder, and defraud).

20.    Based on the foregoing, Movant is entitled to relief under § 362(d)(4) in light of the numerous bankruptcy filings of Debtor, the timing of the filings and the lack of payment on the Loan.  These actions constitute a scheme to hinder, delay, and defraud Movant as it attempts to exercise its state law remedies as mortgagees.

## IV.  IN THE ALTERNATIVE, RELIEF IS APPROPRIATE UNDER 11 U.S.C. § 362(d)(1) AND (2)

21.    In the event this Court finds that *in rem* relief is not warranted, relief from the automatic stay should be granted, for cause, under 11 U.S.C. § 362(d)(1) and (2). Further detail on the default of the Loan is illustrated by the Relief from Stay Worksheet, affixed hereto as **"Exhibit C."** The loan is contractually due and owing for 67 payments:

| | |
|---|---|
| 9 Defaulted Monthly Payments at $6,519.78 each (December 2017 through August 2018) | $58,678.02 |
| 12 Defaulted Monthly Payments at $6,584.40 each (September 2018 through August 2019) | $79,012.80 |
| 12 Defaulted Monthly Payments at $6,755.00 each (September 2019 through August 2020) | $81,060.00 |
| 12 Defaulted Monthly Payments at $6,678.58 each (September 2020 through August 2021) | $80,142.96 |
| 12 Defaulted Monthly Payments at $6,764.50 each (September 2021 through August 2022) | $81,174.00 |
| 6 Defaulted Monthly Payments at $6,725.03 each (September 2022 through February 2023) | $40,350.18 |

| | |
|---|---|
| 4 Defaulted Monthly Payments at $6,738.62 each (March 2023 through June 2023) | $26,954.48 |
| Total Delinquencies | $447,372.44 |

22.     Based upon the Debtor's Schedule D, the Property has an estimated fair value of approximately $2,900,000.00.  A copy of Schedule D is annexed hereto as **Exhibit "D"**.  As indicated in paragraph 19 herein above, the total debt to Movant equals $1,601,680.00.  Movant is unclear as to how Debtor valued the Property and, as such, reserves its right to obtain an independent appraisal of the property, if necessary.

23.     The Debtor, Debtor's Attorney, Chapter 13 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

24.     No prior application has been made for the relief requested herein.

**WHEREFORE,** for the reasons set forth herein, Movant respectfully requests that its Motion for *In Rem* Relief be granted pursuant to 11 U.S.C. § 362(d)(4), such that any and all future filings under the Bankruptcy Code during the next two years by any person or entity with an interest in the Property, shall not operate as a stay as to its enforcement of its rights in and to 28 Club Lane, Remsenburg, NY 11960; or, in the alternative, for an order pursuant to 11 U.S.C. §§ 362(d)(1) and (2);  granting relief from the automatic and for such further relief that this Court deems appropriate

Dated:  September 8          , 2023

                                        /s/ Michael J. Chatwin
                                        Michael J. Chatwin
                                        Robert W. Griswold
                                        Shari S. Barak
                                        LOGS Legal Group LLP
                                        Attorneys for Select Portfolio Servicing, Inc. as
                                        Servicer for Wells Fargo Bank, National Association
                                        as Trustee for Securitized Asset Backed Receivables
                                        LLC Trust 2006-FR1 Mortgage Pass-Through
                                        Certificates, Series 2006-FR1
                                        175 Mile Crossing Boulevard
                                        Rochester, New York 14624
                                        Telephone: (585) 247-9000
                                        Fax: (585) 247-7380

18-069995

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on  September 8 , 2023, a copy of Notice of Motion, Affirmation in Support, Exhibits and Proposed Order Granting Relief from the Automatic Stay was caused to be deposited in an enclosed, properly addressed post-paid envelope, and served by ordinary U.S. Mail upon the following:

Debtor
Michael J. Hurley dba The Sebonac Company
40 Station Road
Westhampton, NY 11977

Attorney for Debtor
Michael J. Macco
2950 Express Drive South, Suite 109
Islandia, NY 11749

Trustee
Krista M. Preuss
100 Jericho Quadrangle, Suite 127
Jericho, NY 11753

U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437

Raquel Felix, Esq.
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
6409 Congress Ave., Suite 100
Boca Raton, FL 33487

Dated:  September 8, 2023                          /s/ Michael J. Chatwin
                                                                  Michael J. Chatwin
                                                                  Robert W. Griswold
                                                                  Shari S. Barak
                                                                  LOGS Legal Group LLP
                                                                  175 Mile Crossing Boulevard
                                                                  Rochester, New York 14624
                                                                  Telephone: (585) 247-9000
                                                                  Fax: (585) 247-7380
                                                                  Email: logsecf@logs.com

18-069995

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 13 |
| MICHAEL J. HURLEY DBA THE SEBONAC COMPANY, | CASE NO. 8-23-72230-ast |
| | JUDGE: Alan S. Trust |
| DEBTOR. | |

## ORDER PURSUANT TO 11 U.S.C. § 362(d)(4)
## MODIFYING THE AUTOMATIC STAY *IN REM*

Upon the motion, dated September 8 , 2023 (the "Motion"), of Select Portfolio Servicing, Inc. as Servicer for Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1, (with any subsequent successor or assign, the "Movant"), for an order, pursuant to 11 U.S.C. § 362(d)(4), for *in rem* relief from the automatic stay imposed in subsequent cases under 11 U.S.C. § 362(a), such that any and all future filings under the Bankruptcy Code during the next two years by the debtor herein, Michael J. Hurley or any other person or entity with an interest in the Property shall not operate as a stay as to Movant's enforcement of its rights in and to 28 Club Lane, Remsenburg, NY 11960  (the "Property") and after due and sufficient service and notice, the Court having held a hearing on the Motion on _____, 2023 and no opposition having been submitted; and, after due deliberation, the Court having determined that the filing of the Debtor's bankruptcy petition was part of a scheme to delay, hinder, and defraud creditors that has involved multiple bankruptcy filings by the and Debtor and affecting the Property; and good and sufficient cause appearing, including the failure of the Debtor to perform their duties as a debtor under the Bankruptcy Code in good faith in multiple bankruptcy cases affecting the Property, it is

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. § 362(a), is hereby vacated for cause pursuant to 11 U.S.C. § 362(d) as to Movant, its agents, assigns or successors in interest, so that Movant, its agents, assigns or successors in interest, may take any and all actions pursuant to the Note and Mortgage and applicable state law including but not limited to foreclose its mortgage on the Property without further application to this Court, and it is further

**ORDERED,** that under 11 U.S.C. § 362(d)(4), and provided that this order is recorded in conformity therewith, the automatic stay under 11 U.S.C. § 362(a) is terminated as to Movant's interest in the Property, and said order shall be binding in any other case filed under the Bankruptcy Code purporting to affect the Property that is filed not later than two years after the date of this order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Secured Creditor's interest in the Property; and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** that the Movant shall promptly report to the Chapter 13 Trustee any surplus monies realized by the foreclosure sale Property.

18-069995

# Exhibit "A"

(7.6.11)

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 18, 2005                    BREA, CA 92821
    [Date]                              [City]                                    [State]

28 CLUB LANE     REMSENBURG, NY 11960

[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $        742,500.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FREMONT INVESTMENT & LOAN

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.700        %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  September 1, 2005         .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  August 1, 2035              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2727 EAST IMPERIAL HIGHWAY, BREA CA 92821

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $        4,791.19        . This amount may change.

### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT**



VMP®-815N (0404)                    **Form 5520 3/04**
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                                Initials: _M.H._



## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)   Change Dates**

The interest rate I will pay may change on the first day of     August 1, 2007     , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index.'

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     Five and Ninety-Six Hundredths     percentage points (    5.9600     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     8.700     % or less than     6.7000     %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than     1.5000     from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than     12.7000     % or less than     6.7000     %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF*

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted  so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.0    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:



Form 5220 3/04
Initials: _____

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

```
*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF*
```

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
MICHAEL HURLEY                          -Borrower                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                          -Borrower


*[Sign Original Only]*


VMP®-815N (0404)                         Page 4 of 4                                    Form 5520 3/04

Pay to the order of   *
         without recourse.

*Michael Koch* (signature)

Fremont Investment & Loan
Michael Koch
Vice President

* Wells Fargo Bank, National
Association, as Trustee for the
Pooling and Servicing Agreement
Dated as of February 1, 2006
Securitized Asset Backed
Receivables LLC Trust 2006-FR1
Mortgage Pass-Through Certificates,
Series 2006-FR1



# SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

| | |
|---|---|
| Type of Instrument: MORTGAGE/MMM | Recorded: 08/08/2005 |
| Number of Pages: 24 | At: 11:42:43 AM |

**MORTGAGE NUMBER: CW051180**

LIBER: M00021101
PAGE: 915

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0900 | 380.00 | 02.00 | 063.000 |

### EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount: $742,500.00

**Received the Following Fees For Above Instrument**

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $72.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $30.00 | NO | SCTM | $0.00 | NO |
| Mort.Basic | $3,712.50 | NO | Mort.Addl | $2,197.50 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $1,856.25 | NO |
| | | | Fees Paid | $7,893.25 | |

**MORTGAGE NUMBER: CW051180**

### THIS PAGE IS A PART OF THE INSTRUMENT
### THIS IS NOT A BILL

Edward P.Romaine
County Clerk, Suffolk County

Number of pages **24**

**1** **2**

RECORDED
2005 Aug 08 11:42:43 AM
Edward P.Romaine
CLERK OF
SUFFOLK COUNTY
L M00021101
P 915
CM051180

TORRENS

Serial # _____

Certificate # _____

Prior Ctf. # _____

| Deed . Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3** FEES

| | | |
|---|---|---|
| Page / Filing Fee | _____ | |
| Handling | 5. 00 | |
| TP-584 | _____ | |
| Notation | _____ | |
| EA-5217 (County) | _____ | Sub Total _____ |
| EA-5217 (State) | _____ | |
| R P.T.S.A. | 30 — | |
| Comm. of Ed. | 5. 00 | |
| Affidavit | _____ | |
| Certified Copy | _____ | |
| Reg. Copy | _____ | Sub Total _____ |
| Other | _____ | Grand Total 127 |

| | |
|---|---|
| Mortgage Amt. | 74,500 — |
| 1. Basic Tax | _____ |
| 2. Additional Tax | _____ |
| Sub Total | _____ |
| Spec. / Assit. | |
| or | |
| Spec. / Add. | |
| TOT. MTG. TAX | 276.25 |
| Dual Town ___ Dual County ___ | |
| Held for Appointment ___ | |
| Transfer Tax | _____ |
| Mansion Tax | _____ |

The property covered by this motgage is
or will be improved by a one or two
family dwelling only.

YES ✓ or NO _____

If NO, see appropriate tax clause on
page # _____ of this instrument.

**4** 

| District 0900 | Section 380.00 | Block 02.00 | Lot 063.000 |
|---|---|---|---|

Real
Property
Tax Service
Agency
Verification

0900 38000 0200 063000

P T S
R MMA /
08-AUG-05

**5** Community Preservation Fund

| | |
|---|---|
| Consideration Amount | $ _____ |
| CPF Tax Due | $ _____ |
| Impro ed | _____ |
| Vacan: Land | _____ |
| TD | _____ |
| TD | _____ |
| TD | _____ |

**6** Satisfaction/Discharges/Release List Property Owners Mailing Address
RECORD & RETURN TO:

Fremont Investment + Loan
PO Box 34078
Fullerton, CA 92834 34078

**7** Title Company Information

Co. Name Secure Land

**8** **Suffolk County Recording & Endorsement Page**

This page forms part of the attached _Mortgage_ made by:
(SPECIFY TYPE OF INSTRUMENT)

Fremont Investment
Loan
The premisis herein is situated in

SUFFOLK COUNTY, NEW YORK.

michael TO Hurley
In the Township of South Hampton

In the VILLAGE _____

or HAMLET of Remsenberg

BOXES 6 THROUGH 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING
(over)

Return To:
FREMONT INVESTMENT & LOAN
P.O. BOX 34078
FULLERTON, CA 92834-34078

Prepared By:
BARBARA LICON

———— [Space Above This Line For Recording Data] ———— ——

# MORTGAGE MIN ▓▓▓▓▓▓▓

*6·02·05
L·#3.000*

## WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated  July 18, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."  MICHAEL HURLEY, AN UNMARRIED MAN

whose address is  28 CLUB LANE   , EASTPORT, NY 11960
                              sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.**
(D) "Lender."  FREMONT INVESTMENT & LOAN          *6 4316 miller Road*

will be called "Lender." Lender is a corporation or association which exists under the laws of
CALIFORNIA                           . Lender's address is
2727 EAST IMPERIAL HIGHWAY, BREA CA 92821

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3033 1/01

-6A(NY) (0005) 02
Page 1 of 17        Initials: M.A.
VMP Mortgage Solutions, Inc. (800)521-7291

SECURELAND TITLE AGENCY, INC
300 Woodcleft Ave. Suite 3 1S
Freeport, NY 11520
516-623-4340

**(E) "Note."** The note signed by Borrower and dated July 18, 2005 , will be called the "Note." The Note shows that I owe Lender Seven Hundred Forty-Two Thousand, Five Hundred and No/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dollars (U.S. $   742,500.00   )

plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by August 1, 2035

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at

| 28 CLUB LN | | [Street] |
| REMSENBURG | [City, Town or Village], New York 11960 | [Zip Code]. |
| This Property is in SUFFOLK | | County. It has the following legal |
| description: | | |

SEE ATTACHED LEGAL DESCRIPTION.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien:"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

 -6A(NY) (0005).02          Page 6 of 17          Initials:           Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior

to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Initials M.H.

that any repairs or restorations are being made. Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes

Initials: M.H.

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the

Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing

any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which

will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

Initials: M.W.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          MICHAEL HURLEY                    -Borrower

_____          _____ (Seal)
                                                                           Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                 Borrower

-6A(NY) (0005).02                    Page 16 of 17                    Form 3033 1/01

**STATE OF NEW YORK,**

County ss: *Nassau*

On the *18* day of *July* *2005* before me, the undersigned, a notary public in and for said state, personally appeared

*Michael Hurley*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

VAUGHNETTE TREPAL
Notary Public, State of New York
No. 01TR6096636
Qualified in Nassau County
Commission Expires Aug. 4, 2007

Tax Map Information:

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 18th day of July 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FREMONT INVESTMENT & LOAN

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
28 CLUB LANE   PEMSENBURG, NY 11960

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 6.700 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on the first day of August 2007, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER - Single Family**

-899R (0402)
Page 1 of 5        Initials: [handwritten]
VMP Mortgage Solutions, Inc.
(800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:

the average of interbank offered rates for six-month U.S. dollar denominated deposits in the London market ("LIBOR"), as published in the WALL STREET JOURNAL. The most recent Index figure available as of the date: ☒ 45 days ☐ ☐____  _____ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Five and Ninety-Six Hundredths                              percentage points (         5.9600   %) to the Current Index. The Note Holder will then round the result of this addition to the  ☒ Nearest  ☐ Next Highest   ☐ Next Lowest  One-Eighth
(  0.125                                          %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☐ **Interest-Only Period**

The "Interest only Period" is the period from the date of this Note through N/A                . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: M. H.

899R (0402)                           Page 2 of 5

**(D) Limits on Interest Rate Changes**
**(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)**

☐ (1) There will be no maximum limit on interest rate changes.

☒ (2) The interest rate I am required to pay at the first Change Date will not be greater than    8.700          % or less than    6.7000          %.

☒ (3) My interest rate will never be increased or decreased on any subsequent single Change Date by more than   One and One-Half
percentage points (          1.5000          %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than   12.7000          %, which is called the "Maximum Rate."

☒ (5) My interest rate will never be less than          6.7000   %, which is called the "Minimum Rate."

☒ (6) My interest rate will never be less than the initial interest rate

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than    8.700          % or less than    6.7000          %. Thereafter, my interest rate will never be increased or decreased on any subsequent single Change Date by more than   One and One-Half
percentage points (          1.5000          %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _M.H._

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _M. H._

-899R (0402)                          Page 4 of 5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
MICHAEL HURLEY        -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                     -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                     -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                     -Borrower                              -Borrower

-899R (0402)                      Page 5 of 5

## SCHEDULE A DESCRIPTION (cont.)

**The land referred to in this Certificate is described as follows:**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Remsenburg, Town of Southhampton, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Club Lane, which point is north 13 degrees 41 minutes 00 seconds east, 247.88 feet northerly from a concrete monument set in the easterly side of Club Lane at the southwest corner of other land of Harry Goldstein & Sons and land now or formerly of Remsenburg Basin & Sales Corp.;

RUNNING THENCE from said point, north 13 degrees 41 minutes 00 seconds east, 40.02 feet to a point on the easterly side of Club Lane;

THENCE south 74 degrees 13 minutes 16 seconds east 371.23 feet to a point and land now or formerly of William J. Murphy;

THENCE south 16 degrees 57 minutes 00 seconds west along said land of Murphy, 99.17 feet to a point;

THENCE still along said last mentioned land, south 15 degrees 14 minutes 10 seconds west, 191.68 feet to a monument and land now or formerly of Remsenburg Basin & Sales Corp.

THENCE along said last mentioned land, north 73 degrees 44 minutes 00 seconds west, 153.50 feet to a point and other land of Harry Goldstein and Sons;

THENCE along said last mentioned land north 16 degrees 04 minutes 35 seconds east 249.59 feet to a point;

THENCE north 74 degrees 13 minutes 16 seconds west 213.00 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:  SECTION: 380.00    BLOCK: 02.00        LOT: 063.000

1 | 2

**Number of pages** 4

RECORDED
2009 Dec 21 02:07:09 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00021898
P 265

This document will be public record. Please remove all Social Security Numbers prior to recording.

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3** | FEES

| | | Mortgage Amt. |
|---|---|---|
| Page / Filing Fee | 20 | 1. Basic Tax |
| Handling | 25.00 | 2. Additional Tax |
| TP-584 | | Sub Total |
| Notation | 50 | Spec./Assit. |
| EA-52 17 (County) | Sub Total | or |
| EA-5217 (State) | | Spec. /Add. |
| R.P.T.S.A. | 35 | TOT. MTG. TAX |
| Comm. of Ed. | 5.00 | Dual Town ___ Dual County ___ |
| | | Held for Appointment |
| Affidavit | | Transfer Tax |
| Certified Copy | | Mansion Tax |
| NYS Surcharge | 15.00 | |
| Other | | Sub Total |
| | Grand Total | 90.50 |

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES ___ or NO ___

If NO, see appropriate tax clause on page # ___ of this instrument.

CM

| 4 | Dist. 0900 | Section 380.00 | Block 02.00 | Lot 063.000 | **5** | Community Preservation Fund |
|---|---|---|---|---|---|---|

Real Property Tax Service Agency Verification

CHM 12-17-09

Consideration Amount $ _____

CPF Tax Due | $ _____

Improved

Vacant Land

TD _____
TD _____
TD _____

**6** Satisfactions/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:

THRESHOLD LAND, INC.
584 MAIN ST.
ISLIP, NY 11751
ATTN: CHRISTOPHER TORRES

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

**7** | Title Company Information

Co. Name  THL

**8** **Suffolk County Recording & Endorsement Page**

This page forms part of the attached  ASSIGNMENT OF MORTGAGE  made by: (SPECIFY TYPE OF INSTRUMENT)

MERS, INC. AS NOMINEE FOR FREMONT INVESTMENT & LOAN

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

TO

WELLS FARGO BANK, NA

In the TOWN of  SOUTHHAMPTON

In the VILLAGE

or HAMLET of  REMSENBURG

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

COUNTY: Suffolk
DISTRICT: 900
SECTION: 380
BLOCK: 2
LOT: 63

ORIGINAL

Form 8021°-Assignment of Mortgage without Covenant-
Individual or Corporation (Single Sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-
THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.**

KNOW THAT

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
FREEMONT INVESTMENT & LOAN** a corporation organized and existing under the laws of
the United States of America whose principal place of business is 3300 SW 34TH AVENUE,
**SUITE 101, OCALA, FL 34474**
assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable
consideration, paid by

**Wells Fargo Bank, National Association, as Trustee under Pooling and Servicing
Agreement dated as of February 1, 2006, Securitized Asset-Backed Receivables LLC Trust
2006-FR1 Mortgage Pass- Through Certificates, Series 2006-FR1** a corporation whose
principal place of business is  **701 CORPORATE CENTER DRIVE, SUITE 300, RALEIGH,
NC 27607,**
assignee,

hereby assigns unto the assignee, a certain Mortgage dated July 18, 2005, made by MICHAEL
HURLEY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
FOR FREEMONT INVESTMENT & LOAN in the principal sum of $742,500.00 and recorded
on August 8, 2005 in Liber/Reel 21101 of Mortgages, Page 915 in the Office of the Clerk of the
County of Suffolk covering premises known as 28 CLUB LN, REMSENBURG, NY 11960.
This assignment is effective as of February 1, 2006.

This assignment is not subject to the requirements of Section 275 of the Real Property Law
because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due
and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the
assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees"
whenever the sense of this instrument so requires.

DATED:
October 30, 2009

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR FREEMONT
INVESTMENT & LOAN THEIR
SUCCESSORS AND ASSIGNS.

By:
Joyce Watson
Asst. Sec.

(General Acknowledgment for documents executed and notarized in New York State Only)

ACKNOWLEDGMENT

State of New York )
County of _____)ss.

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her heir capacity(ies), that by his/her heir signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Signature

(General Acknowledgment for documents executed and notarized outside of New York State, except California)

ACKNOWLEDGMENT

State of _____}
County of _____} ss.

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her heir capacity(ies), that by his/her heir signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _____, State of _____.

_____
Notary Signature

(General Acknowledgment for documents executed and notarized in California)

ACKNOWLEDGMENT

State of California }
County of Sacramento } ss.

On October 30, 2009 before me, S. Carbajal, Notary Public, personally appeared Jolie Nelson, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Notary Signature

S. CARBAJAL
COMM. #1673843
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO CO.
EXP. JUNE 9, 2010

Assignment of Mortgage
Without Covenant

TITLE NO.

---

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR FREEMONT
INVESTMENT & LOAN

TO

Wells Fargo Bank, National Association, as
Trustee under Pooling and Servicing
Agreement dated as of February 1, 2006,
Securitized Asset-Backed Receivables LLC
Trust 2006-FR1 Mortgage Pass- Through
Certificates, Series 2006-FR1

DISTRICT: 900

SECTION:  380

BLOCK:   2

LOT:    63

COUNTY OR TOWN: Suffolk
PROPERTY ADDRESS: 28 CLUB LN,
REMSENBURG, NY 11960

RECORD AND RETURN TO:

HomEq
701 Corporate Center Drive
Raleigh, NC 27601

Investor Loan # ███████

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two Step Documentation Process)

*DIGIMAIL APR 2 4 2017*

Borrower ("I"):1  **MICHAEL J HURLEY**
Lender or Servicer ("Lender"): **Select Portfolio Servicing, Inc.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **July 18, 2005**
Loan Number ███████
Property Address [and Legal Description if recordation is necessary] ("Property"):
**28 CLUB LANE**
**REMSENBURG, NY 11960**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.  I certify, represent to Lender, covenant and agree:**

   A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.    One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C.    There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D.    I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.    If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.  I understand and acknowledge that:**

   A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B.    I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

---

1. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I."  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

CB018

CS006.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **April 1, 2017** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect.  The first modified payment will be due on **April 1, 2017**.

A.   The Maturity Date will be: **November 1, 2035.**

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$1,239,735.12** (the "New Principal Balance"). The New Principal Balance will consist of two (2) parts: (i) an amount which will accrue interest at the Note rate shown below, and on my monthly statement as Interest Bearing Principal Balance and (ii) an amount which will not accrue interest, shown below, and on my monthly statement as Deferred Principal Balance.

C.   **$6,951.43** of the New Principal Balance shall be deferred (the Deferred Principal Balance) and I will not pay interest or make monthly payments on this amount.  The new principal balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is **$1,232,783.69.** Interest at the rate of **3.625%** will begin to accrue on the Interest Bearing Principal Balance as of **March 1, 2017** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **April 1, 2017.** My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1–19 | 3.625% | 03/01/2017 | $4,868.55 | $1,384.94, may adjust periodically | $6,253.49, may adjust periodically | 04/01/2017 | 224 |
| **A final balloon payment on the Interest Bearing Principal Balance of $867,055.04 is due on the Maturity Date.** | | | | | | | |

The Deferred Principal Balance of **$6,951.43** will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date.  The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.
*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.  My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

OB018

CS006

F. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owned under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

08018

CS006

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

OB018

CS006

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501 2026, 888 679 MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." i agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment.  Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**BALLOON NOTICE:** In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match.  As a result of the difference between these two periods, there will be an amount due $867,055.04 on the date your lien matures on November 1, 2035. The amount due at maturity is in addition to your monthly scheduled payment and the principal forbearance of $6,951.43 that you received as part of your modification.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

08018

CS006

In Witness Whereof, the Lender and I have executed this Agreement.

**Select Portfolio Servicing, Inc.**

MICHAEL J HURLEY _____ (Seal)

4/19/17 _____ Date

By: _____        _____ (Seal)

_____ Date        _____ Date

_____ [Space Below This Line For Acknowledgement] _____

State of New York
County of Suffolk
Sworn to before me this
19th day of April 2017

_Lisbeth D. Whitney_

Lisbeth D Whitney
NOTARY PUBLIC

LISBETH D WHITNEY
Notary Public, State of New York
No. 01WH4817516
Qualified in Suffolk County
Commission Expires June 30, 2018

# Exhibit "B"



At Part 33 of the Supreme Court held in the County of Suffolk, at the Suffolk Courthouse thereof, on the 28 day of February, 2020.

PRESENT: Hon. Thomas Whelan, J.S.C.
JUSTICE OF THE SUPREME COURT

**Mot. Seq. # 003 - MG**
**Case Disposed: Yes**

INDEX NO. 605465/2018

Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1,

Plaintiff(s),

v.

Michael Hurley a/k/a Michael J. Hurley a/k/a Michael John Hurley; Mortgage Electronic Systems, Inc., as nominee for Fremont Investment & Loan; United States of America; "John Doe"; Jessica "Doe",

Defendant(s).

**ENTERED: MAR 1 1 2020**
**AT: 11:31am**

**ORDER CONFIRMING**
**REFEREE REPORT AND**
**JUDGMENT OF**
**FORECLOSURE AND SALE**

MORTGAGED PROPERTY:
28 Club Lane
Remsenburg, NY 11960

SBL #: District 0900 Section 380.00 Block 02.00 Lot 063.000

**UPON** the Summons, Complaint, and Notice of Pendency filed in this action on the 23rd day of March, 2018, on the Additional Notice of Pendency filed on September 7, 2018, the Notice of Motion dated 12/16/19, the affirmation by Patrick Gregorits, Esq., the affidavit of merit and amount due by Destiny Taylor, who is Document Control Officer, duly sworn to on November 6, 2019, together with the exhibits annexed thereto, all in support of Plaintiff's motion for a Judgment of Foreclosure and Sale; and

**UPON** proof that each of the defendants herein has been duly served with the Summons and Complaint in this action, and has not served any answer to the Complaint nor had their time to do so extended; and it appearing that more than the legally required number of days has elapsed since defendants, Mortgage Electronic Systems, Inc., as nominee for Fremont Investment & Loan and "John Doe" and Jessica "Doe", were so served and/or appeared; and Plaintiff having established to the court's satisfaction that a judgment against defendants is warranted; and

UPON the affidavit of mailing reflecting compliance with CPLR 3215(g)(3)(iii); and

UPON proof that non-appearing defendants, Mortgage Electronic Systems, Inc., as nominee for Fremont Investment & Loan and "John Doe" and Jessica "Doe", are not absent, in accordance with RPAPL §1321(2); and

A Referee having been appointed to compute the amount due to Plaintiff upon the bond/note and mortgage set forth in the Complaint and to examine whether the mortgaged property can be sold in parcels; and

UPON reading and filing the Report of Gabrielle Weglein Esq. dated November 15, 2019, showing the sum of $1,383,245.19 due as of the date of said Report and that the mortgaged property may not be sold in parcels; and

UPON proof of due notice of this motion upon all parties entitled to receive same, and upon all the prior proceedings and papers filed herein;

NOW, on motion by Patrick Gregorits, Esq., attorney for the Plaintiff, it is hereby

**ORDERED, ADJUDGED AND DECREED**, that the motion is granted; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the Referee's Report be, and the same is, hereby in all respects ratified and confirmed; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the mortgaged property described in the Complaint and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of this action as provided by the RPAPL be sold, within 90 days of the date of this Judgment, in one parcel, at a public auction at the _____, by and under the direction of Gabrielle Weglein, Esq., 1 Tulip Avenue, Hampton Bays, NY 11946, (516)885-1965 who is hereby appointed Referee for that purpose; that said Referee give public notice of the time

and place of sale in accordance with RPAPL §231 in

_Southampton Press_ ; and it is further

**ORDERED, ADJUDGED AND DECREED**, that by accepting this appointment, the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2(c) ("Disqualifications from appointment") and §36.2 (d) ("Limitations on appointments based upon compensation"); and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is present at the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors and/or assigns, or its representative; and it is further

**ORDERED, ADJUDGED, AND DECREED** that if the Referee does not conduct the sale within 90 days of the date of the judgment, in accordance with CPLR 2004, the time fixed by RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably practicable; and it is further

**ORDERED, ADJUDGED, AND DECREED** that at the time of sale the Referee shall accept a written bid from the Plaintiff or the Plaintiff's attorney, just as though Plaintiff were physically present to submit said bid; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee shall accept the highest

bid offered by a bidder who shall be identified upon the court record, and shall require that the

successful bidder immediately execute Terms of Sale for the purchase of the property, and pay to

the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the

successful bidder is Plaintiff in which case no deposit against the purchase price shall be

required; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, in the event the first successful

bidder fails to execute the Terms of Sale immediately following the bidding upon the subject

property or fails to immediately pay the ten percent (10%) deposit as required, the property shall

immediately and on the same day be reoffered at auction; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee shall then deposit the

down payment and proceeds of sale, as necessary, in the Referee's I.O.L.A. account maintained

for legal clients, in his/her own name as Referee, in accordance with CPLR 2609; and it is further

**ORDERED, ADJUDGED AND DECREED**, that after the property is sold, the Referee

shall execute a deed to the purchaser, in accordance with RPAPL §1353 and the terms of sale,

which shall be deemed a binding contract; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, in the event a party other than the

Plaintiff becomes the purchaser at the sale, the closing of title shall be held no later than 30 days

after the date of such sale unless otherwise stipulated by all parties to the sale; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, if Plaintiff (or its affiliate, as defined

in paragraph (a) of subdivision 1 of section six-1 of the Banking Law) is the purchaser, such

party shall place the property back on the market for sale or other occupancy: (a) within 180 days

of the execution of the deed of sale, or (b) within 90 days of completion of construction,

renovation, or rehabilitation of the property, provided that such construction, renovation, or rehabilitation proceeded diligently to completion, whichever comes first, provided however, that a court of competent jurisdiction may grant an extension for good cause; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee, on receiving the proceeds of such sale, shall forthwith pay therefrom, in accordance with their priority according to law, all taxes, assessments, sewer rents or water rates, which are, or may become, liens on the property at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee then deposit the balance of said proceeds of sale in his/her own name as Referee in their I.O.L.A. account maintained for legal clients, and shall thereafter make the following payments in accordance with RPAPL §1354, as follows:

FIRST: The Referee's statutory fees for conducting the sale, in accordance with CPLR 8003(b), not to exceed $750.00 unless the property sells for $50,000.00 or more or in the event a sale was cancelled or postponed, Plaintiff shall compensate the Referee in the sum of $_____ for each adjournment or cancellation, unless the Referee caused the delay; *[handwritten: shall be $ 500 @]*

SECOND: All taxes, assessments, and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not become absolute, and any other amounts due in accordance with RPAPL §1354(2).  Purchaser shall be responsible for interest and penalties due on any real property taxes accruing after the sale.  The Referee shall not be

responsible for the payment of penalties or fees pursuant to this appointment.   The

Purchaser shall hold the Referee harmless from any such penalties or fees assessed;

THIRD: The expenses of the sale and the advertising expenses as shown on the

bills presented and certified by said Referee to be correct, duplicate copies of which shall

be annexed to the report of sale;

FOURTH: The Referee shall then pay to the Plaintiff or its attorney the following:

Amount Due per Referee's Report:  $1,383,245.19 with interest at the note rate

from October 15, 2019 until the date of entry of this judgment, together with any

advances as provided for in the note and mortgage which Plaintiff has made for taxes,

insurance, principal, and interest, and any other charges due to prior mortgages or to

maintain the property pending consummation of this foreclosure sale, not previously

included in the computation, upon presentation of receipts for said expenditures to the

Referee, all together with interest thereon pursuant to the note and mortgage, and then

with interest from the date of entry of this judgment at the statutory rate until the date the

deed is transferred;

Costs and Disbursements:  $3,165.46 adjudged to the Plaintiff for costs and

disbursements in this action, with interest at the statutory judgment rate from the date of

entry of this judgment;

Additional Allowance: $ ___3,00___ is hereby awarded to Plaintiff in

addition to costs, with interest at the statutory judgment rate from the date of entry of this

judgment, pursuant to CPLR Article 83;

Attorney Fees:  $5,225.00 is hereby awarded to Plaintiff as reasonable legal fees

herein, with interest at the statutory rate from the date of entry of this judgment;

FIFTH: Surplus monies arising from the sale shall be paid into ~~~~ by the officer

conducting the sale within five days after receipt in accordance with RPAPL §1354(4)

and funds shall be deposited with the Clerk of the Court; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the Plaintiff is the purchaser of the

property, or in the event that the rights of the purchasers at such sale and the terms of sale under

this judgment shall be assigned to and be acquired by the Plaintiff, and a valid assignment thereof

is filed with said Referee, said Referee shall not require Plaintiff to pay in cash the entire amount

bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, a deed or deeds of the

property sold upon the payment to said Referee of the amounts specified in items marked "First",

"Second", and "Third" above; that the Referee shall allow the Plaintiff to pay the amounts

specified in "Second" and "Third" above when it is recording the deed; that the balance of the

bid, after deducting the amounts paid by the Plaintiff, shall be applied to the amount due to

Plaintiff as specified in paragraph "Fourth" above; that Plaintiff shall pay any surplus after

applying the balance of the bid to the Referee, who shall deposit it in accordance with paragraph

"Fifth" above; and it is further

**ORDERED, ADJUDGED AND DECREED** that all expenses of recording the

Referee's deed, including real property transfer tax, which is not a lien upon the property at the

time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds, and that any

transfer tax shall be paid in accordance with Tax Law §1404; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the sale proceeds distributed in

accordance with paragraphs "First", "Second", "Third", and "Fourth" above are insufficient to

pay Plaintiff the Amount Due per the Referee's Report as set forth in paragraph "Fourth" above,

Plaintiff may seek to recover a deficiency judgment against Michael J. Hurley, unless discharged in bankruptcy, in accordance with RPAPL §1371 if permitted by law; and it is further

**ORDERED, ADJUDGED AND DECREED** that the mortgaged property is to be sold in one parcel in "as is" physical order and condition, subject to any condition that an inspection of the property would disclose; any facts that an accurate survey of the property would show; any covenants, restrictions, declarations, reservations, easements, right of way, and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged property is located and possible violations of same; any rights of tenants or persons in possession of the subject property; prior liens of record, if any, except those liens addressed in RPAPL §1354; any equity of redemption of the United States of America to redeem the property within 120 days from the date of sale; and any rights pursuant to CPLR 317, 2003, and 5015, or any appeal of the underlying action or additional litigation brought by any defendant or its successor or assignee contesting the validity of this foreclosure; and it is further

**ORDERED, ADJUDGED AND DECREED** that the purchaser be let into possession of the property upon production in hand of the Referee's Deed or upon personal service of the Referee's deed in accordance with CPLR 308; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Defendants in this action and all persons claiming through them and any person obtaining an interest in the property after the filing of the Notice of Pendency are barred and foreclosed of all right, claim, lien, title, and interest in the property after the sale of the mortgaged property; and it is further

**ORDERED, ADJUDGED AND DECREED** that within 30 days after completing the sale and executing the proper conveyance to the purchaser, unless the time is extended by the court, the officer making the sale shall file with the clerk a report under oath of the disposition of

the proceeds of the sale in accordance with RPAPL §1355(1) and follow all local County rules regarding handling of Surplus Monies; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the purchaser or purchasers at said sale default(s) upon the bid and/or the terms of sale the Referee may place the property for resale without prior application to the Court unless Plaintiff's attorneys shall elect to make such application; and it is further

**ORDERED, ADJUDGED AND DECREED** that Plaintiff shall serve a copy of this Judgment with Notice of Entry upon the owner of the equity of redemption, any tenants named in this action, and any other parties or persons entitled to service, including the Referee appointed herein; and it is further

**ORDERED, ADJUDGED AND DECREED** that nothing herein shall be deemed to relieve Plaintiff of any obligation imposed by RPAPL §1307 and RPAPL §1308 to secure and maintain the property until such time as ownership of the property has been transferred and the deed duly recorded; and it is further

**ORDERED, ADJUDGED AND DECREED** that when the Referee files a report of sale, he or she shall concurrently file a Foreclosure Actions Surplus Monies Form; and it is further

**ORDERED, ADJUDGED AND DECREED** that to ensure compliance herewith, Plaintiff shall file a written report with the court within six months from the date of entry of this judgment stating whether the sale has occurred and the outcome thereof.

### Schedule A- Description of the Premises

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being at Remsenburg, Town of Southampton, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Club Lane, which point is north 13 degrees 41 minutes 00 seconds east, 247.99 feet northerly from a concrete monument set in the easterly side of Club Lane at the southwest corner of other land of Harry Goldstein & Sons and land now or formerly of Remsenburg Basin & Sales Corp.

RUNNNG THENCE from said point, north 13 degrees 41 minutes 00 seconds east. 40.02 feet to a point on the easterly side of Club Lane;

THENCE south 74 degrees 13 minutes 16 seconds east 371.23 feet to a point and land now or formerly of William J. Murphy;

THENCE south 16 degrees 57 minutes 00 seconds west along said land of Murphy, 99.17 feet to a point;

THENCE still along said last mentioned land, south 15 degrees 14 minutes 10 seconds west, 191.68 feet to a monument and land now or formerly of Remsenburg Basin & Sales Corp.;

THENCE along said last mentioned land, north 73 degrees 44 minutes 00 seconds west, 153.50 feet to a point and other land of Harry Goldstein and Sons;

THENCE along said last mentioned land north 15 degrees 04 minutes 35 seconds east 249.59 feet to a point;

THENCE north 74 degrees 13 minutes 16 seconds west 213.00 feet to the point or place of BEGINNING.

**28 Club Lane, Remsenburg, NY (Town of Southhampton) Suffolk County
TAX ACCT. NO.  0900-380.00-02.00-063.000**

Said property is commonly known as 28 Club Lane, Remsenburg, NY 11960.

The legal description of the mortgaged property referred to herein is annexed hereto as

Schedule A.

GRANTED

FEB 2 6 2020

JUDITH A. PASCALE
Clerk of Suffolk County

DATED: _____

ENTER

_____
Hon. Thomas Whelan, J.S.C.
Justice of the Supreme Court

Attorney certification pursuant
to 22NYCRR §130-1.1-a
is affixed to inside cover.

# Exhibit "C"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE

MICHAEL J. HURLEY DBA THE SEBONAC
COMPANY,

DEBTOR.

CHAPTER 13

CASE NO. 8-23-72230-ast

JUDGE: Alan S. Trust

RELIEF FROM STAY – REAL ESTATE AND
COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1.  ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:  28 Club Lane, Remsenburg, NY 11960

2.  LENDER NAME:  Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1

3.  MORTGAGE DATE:  07/18/2005

4.  POST-PETITION PAYMENT ADDRESS:  Select Portfolio Servicing, Inc., P.O. Box 65250, Salt Lake City, UT 84165-0250

### DEBT AND VALUE REPRESENTATIONS

5.  TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS JUNE 29, 2023: $1,601,680.00
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6.  MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $2,900,000.00

7.  SOURCE OF ESTIMATED MARKET VALUE:  Debtor Schedules

18-069995

## STATUS OF THE DEBT AS OF THE PETITION DATE

8.  DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

    A.  TOTAL:                                          $    1,600,776.98

    B.  PRINCIPAL:                            $    1,230,445.37

    C.  INTEREST:                              $    241,517.51

    D.  ESCROW (TAXES AND INSURANCE):      $    117,430.45

    E.  FORCED PLACED INSURANCE EXPENDED BY MOVANT:  $    0.00

    F.  PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): $    0.00

    G.  PRE-PETITION LATE FEES CHARGED TO DEBTOR(S):   $    0.00

9.  CONTRACT INTEREST RATE:3.625%

 (IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Total Accumulated Late Charges: $96.55
Fees & Costs Due (Lump Sum): $11,287.10

(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:  N/A.)

## AMOUNT OF POST-PETITION DEFAULT AS OF JUNE 29, 2023

11. DATE OF RECEIPT OF LAST PAYMENT: 09/26/2022

12. NUMBER OF PAYMENTS DUE: 67 PAYMENTS.

18-069995

13. PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 12/1/17-8/1/18 | $6,519.78 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/18-8/1/19 | $6,584.40 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/19-8/1/20 | $6,755.00 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/20-8/1/21 | $6,678.58 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/21-8/1/22 | $6,764.50 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/22-2/1/23 | $6,725.03 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 3/1/23-6/1/23 | $6,738.62 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| TOTALS | $447,372.44 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A.  TOTAL:                                           $_____ 0.00

    B.  ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION:     $_____ 0.00

    C.  FILING FEE IN CONNECTION WITH THIS MOTION:     $_____ 0.00

    D.  OTHER POST-PETITION ATTORNEYS' FEES:     $_____ 0.00

    E.  POST-PETITION INSPECTION FEES:     $_____ 0.00

    F.  POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:     $_____ 0.00

    G.  FORCED PLACED INSURANCE EXPENDED BY MOVANT:     $_____ 0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:     $_____ 0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: N/A

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: N/A.)*

18-069995

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)     COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT N/A.)

18-069995

## DECLARATION AS TO BUSINESS RECORDS

I, _____Claudia Cortez_____, THE _____Document Control Officer_____ OF __Select Portfolio Servicing, Inc.__, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _Salt Lake City_
ON THIS _30_ DAY OF _August_, 20_23_

NAME: **Claudia Cortez**
TITLE: **Document Control Officer**
MOVANT: Select Portfolio Servicing, Inc. as servicer For Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1
STREET ADDRESS: 3217 S. Decker Lake Dr.
CITY, STATE AND ZIP CODE: Salt Lake City, UT 84119

18-069995

## DECLARATION

I, __**Claudia Cortez**__ , THE __**Document Control Officer**__ OF __**Select Portfolio Servicing, Inc.**__ , THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT __Salt Lake City__
ON THIS __30__ DAY OF __August__ , 20__23__

NAME: **Claudia Cortez**
TITLE: **Document Control Officer**
MOVANT: Select Portfolio Servicing, Inc. as Servicer for Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1

STREET ADDRESS: 3217 S. Decker Lake Dr.
CITY, STATE AND ZIP CODE: Salt Lake City, UT 84119

18-069995

# Exhibit "D"

| | |
|---|---|
| **Fill in this information to identify your case:** | |

| | |
|---|---|
| Debtor 1 | **Michael J. Hurley** |
| | First Name       Middle Name       Last Name |
| Debtor 2 (Spouse if, filing) | |
| | First Name       Middle Name       Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

    ☐ **No.** Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

    ■ **Yes.** Fill in all of the information below.

### Part 1: List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1**   **Ocwen Loan Servicing, LLC** <br> Creditor's Name | Describe the property that secures the claim: | $709,131.00 | $1,500,000.00 | $0.00 |

| |
|---|
| **1661 Worthington Road Suite 100 West Palm Beach, FL 33409** |
| Number, Street, City, State & Zip Code |

Describe the property that secures the claim:

| 40 Station Road Westhampton, NY 11977  Suffolk County |
|---|

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

| | |
|---|---|
| Date debt was incurred | **Opened 02/04  Last Active 06/23** |

Last 4 digits of account number   ████

Debtor 1    **Michael J. Hurley**
　　　　First Name　　　　　Middle Name　　　　　Last Name

Case number (if known)

| | |
|---|---|
| 2.2 | **Select Portfolio Serv.** |

Creditor's Name

**Attn: Bankruptcy**
**Po Box 65250**
**Salt Lake City, UT 84165**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a
  community debt

Describe the property that secures the claim:　　$1,514,784.00　　$2,900,000.00　　$0.00

**28 Club Lane Remsenburg, NY**
**11960  Suffolk County**

As of the date you file, the claim is: Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.

- ☐ An agreement you made (such as mortgage or secured
  car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)　　**Mortgage**

Date debt was incurred | **Opened 07/05  Last Active 07/17** | Last 4 digits of account number | ████

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $2,223,915.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $2,223,915.00 |

| **Part 2:** | **List Others to Be Notified for a Debt That You Already Listed** |
|---|---|

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[ ]　　Name, Number, Street, City, State & Zip Code
**Gabrielle M. Weglein, Esq**
**Referee**
**1 Tulip Avenue**
**Hampton Bays, NY 11946-2830**

On which line in Part 1 did you enter the creditor?　**2.2**

Last 4 digits of account number ___

[ ]　　Name, Number, Street, City, State & Zip Code
**LOGS Legal Group LLP**
**175 Mile Crossing Blvd.**
**Rochester, NY 14624**

On which line in Part 1 did you enter the creditor?　**2.2**

Last 4 digits of account number ___

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 2